Curia, per Earle, J.
That the holder of a promissory note should demand payment of the maker, or use due diligence to make such demand, and give reasonable notice of non-payment, in order to charge the indorser, are propositions well enough understood. But in the application of these rules to cases as they arise, there has been less uniformity than one would expect, on a subject of such general concern, and of such frequent occurrence. What shall be deemed due diligence in making a demand, and reasonable notice of non-payment, are questions which even yet give rise to debate, and sometimes result in different conclusions. Nor is it well settled whether they are properly questions of law 'for the court, or of fact for the jury; or partly questions of law, and partly questions of fact. In Tindal v. Brown, 1 Term. Rep. 167, it was said by Lord Mansfield, (Buller J. concurring,) that they are questions partly of fact and partly of law, depending on the situation of the parties; their distance from each other; the course of the post and other circumstances: but whether on a given state of facts the time is reasonable, is a question of law on which the jury should receive the instructions of the court. And that whenever a rule can be laid down, it should be decided by the court, and adhered to, for the sake of certainty. In that case, *242 after two verdicts for the plaintiff, which were set aside, the jury found a special verdict on which the postea was delivered to the plaintiff In Muilman v. D'Eguino, 2 H. B. 565, in 1795, both Ch. J. Eyre and Buller, J. > seemed to regard the question of diligence-as one for -the jury. . The Chief Justice said, “ I am satisfied with the finding of the jury;” the question whether there had been any laches was left to them, which it was proper for them to dedfde, and Buller, Justice, said, “ The only rule that I know of, which can be applied to all cases of 'bills of exchange, is, that due diligence must be used : that is the only thing to be looked at; whether the bill be inland or foreign, or payable at sight, or days after, or in any other manner; and as the jury had found that there were laches in the plaintiffs, he was satisfied, with the verdict.” In Hilton v. Shepard, 6 East. Rep. 12, in note, (in 1796,) Lord Kenyon, on a rule to set aside the verdict for plaintiff, found before himself, on the ground that he had left it to the jury to say whether, under all the circumstances, the plaintiff had been guilty of any laches or negligence, said, “ I cannot, conceive how this'can be matter of law. I can understand that the law should require due diligence ; but that it should be laid down that the notice must.be given that day, or the next, or at any precise time, under whatever circumstances, is, I own, beyond my comprehension. I should rather have conceived that, whether due diligence had or had not been used, was a question for the jury to consider, under all the circumstances, of accident, necessity and the like;” but added, that when the case went down to trial again, he should advise the jury to find a special verdict, by which it would still be made a question of law. He expressed a similar doubt in Hopes v. Alder, in 1800, 6 East. Rep. 16, in notes. “He did not see the sense of the rule in Tindal v. Brown; whether reasonable notice, have or have not been given, must depend on the circumstances of the case of which the jury will judge.” This point was much considered in Darbishire v. Parker, in 1805, 6 East. 2, where Ld. Ellenborough admitted the difficulty in laying down any certain time, within which notice must at all events be given, and thought that a proper case to be considered by another jury. A verdict having been found for the plaintiff, under *243 his instructions," regarding the question of reasonable notice as one compounded of law and fact, he had left it to the jury. The other judges seemed rather to regard it as a question of law, and the rule for a new trial was made absolute. Le Blanc, J. said— “ It is unnecessary to determine the general question; but whenever that shall arise, the court will have to consider whether reasonable notice be a question of fact or of law. In Tindal v. Brown, and in Metcalf v. Hall, it was considered a question of law, but dependant on facts. If the general rule be, that the holder is to send notice by the next post, and he fail to do so, it is for him to show an excuse for the omission; as, that he lived too far from the post-office, or that the post departed again too soon, or that he was unavoidably engaged in other business, which prevented him from writing by the next post; and then the jury will have to consider the validity of such excuse, in point of fact, for his non-compliance with the rule of law. I think this is the true view of the subject, whether the question of demand and reasonable notice be questions of fact or law, or partly of both. It is certain that the verdicts of juries, and the determinations of courts, have established some general rules, as that the holder of a note or bill must demand, payment of the maker or acceptor, when it becomes payable, and must give notice to the party intended to be charged, the next day, where the parties live in the same town, or by the next post, if at different places. It is obvious, therefore, that in the case before the court, the demand of payment was not made in due time of the maker, and that due notice of nonpayment was not given to the defendant. The rules in relation to presentment for acceptance and for payment are the same, as well as those relating to the notice which may be necessary in either case, and if they have not been complied with, it is for the plaintiff to show a valid excuse for the omission.
The note was payable on the 15th of May, and Timmons died on the 11th. The note being locked up in his desk at the bank, was not delivered until the 8th of June, when the demand was made and notice given. His honor, the recorder, thought that no laches could be imputed to the plaintiff, and gave judgment for her. The defendant might have claimed a jury, and submitted *244 the question to them; not having done so, the' case is the same as if the jury had found a verdict for the plaintiff, on the same facts, under proper instructions, and we were called on to set aside the judgment as against law. In the opinion of the court, the case would have been a very proper one for the juryand that there is no sufficient reason to be dissatisfied with the judgment of the recorder. If we were to consider the question here as one of law, to be decided by the court, as on a special verdict, we should come to the same conclusion. Timmons, the agent of the plaintiff who resided in a distant state, became sick and died, four days before the note became payable. Had the note been discovered, or been actually in the hands of his widow and executrix, she was under no obligation, and had no authority to make the demand, or give the notice. The agency of her husband was a personal trust, which did not pass to the executrix, and there is no ground for imputing negligence, unless we hold that Timmons, in the’ moment of his last illness, should have had the foresight to place the note in the hands of a notary. But a protest was not necessary, and any other person engaged to make the demand would have done as well. Under such circumstances, would Timmons have been liable even to the plaintiff, or would his executrix have been, for not taking steps beforehand, while lying at the point of death, to have the demand made and notice given ? I should think not; and I do not therefore perceive how the plaintiff can have laches imputed to her, when she was several hundred miles distant, and not only ignorant of the facts, but could not by the ordinary course of the mail, have been informed of them earlier than the notice was actually given. It is one of those cases of accident, of unforeseen calamity, which may well come within the maxim, actus dd neminefacit injuriam; and which Lord Kenyon, in Hilton v. Shepard, thought was very proper to be left to the jury to consider.
The political state of the country, at the place and time of a bill’s becoming due — as, a declaration of war — which rendered it impossible to present it for acceptance, was held a valid excuse for the omission, it being afterwards presented as soon as practicable: 2 Smith’s Rep. 223; Chitty on Bills, 319. And in New- *245 York, the prevalence of the yellow fever in the city where the parties lived, was held a sufficient excuse for not giving notice of non-payment, from September until November, there being a total cessation of all business; 2 John. Cases, 1.
Note. — See the case of Haslett v. Kunhardt, ante, 189, and the authorities there referred to. R.
Lance, for the motion.
Yeadon and M’Belli, contra.
The judgment of the recorder is affirmed.
Gantt, O’Neall, Butler and Richardson, Justices, concurred.